UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND E. PEYTON,<br><br>        Plaintiff,<br><br>v.<br><br>B. CATES,<br><br>        Defendant. | Case No. 1:21-cv-00740-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED<br><br>(ECF No. 14)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

**I.  BACKGROUND**

Raymond Peyton ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Plaintiff filed the complaint commencing this action on May 7, 2021.  (ECF No. 1).  On June 2, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims.  (ECF No. 5).  The Court gave Plaintiff thirty days from the date of service of the order to file an amended complaint or to notify the Court that he wants to stand on his complaint.  (Id. at 12).

On August 12, 2021, Plaintiff filed his First Amended Complaint.  (ECF No. 14).[1]  The Court has reviewed Plaintiff's First Amended Complaint, and for the reasons described in this order will recommend that this action be dismissed.

---

[1] Plaintiff may have filed his First Amended Complaint earlier, but the Court did not receive it.  (See ECF No. 9).

1

Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

The only defendant listed in the complaint is Brian Cates, the Warden of California Correctional Institution.

Plaintiff brings three claims, and in each he challenges his "unauthorized sentence."

In his first claim, Plaintiff alleges that the judge who handled his trial and sentence ("the

Sentencing Judge") committed fraud and lacked jurisdiction to sentence him, which resulted in the issuance of an unauthorized sentence. Plaintiff's allegations supporting this claim appear to sound in sovereign citizen ideology.[2] For example, Plaintiff alleges that, as a member of the British Accreditation Regency, the Sentencing Judge was well aware that he lacked jurisdiction, but chose to ignore this and fulfill the national bankruptcy, thereby perpetrating fraud upon Plaintiff. As a second example, Plaintiff alleges that the United States is a corporation, and a foreign one with regard and in relation to the fifty states. Since the incorporation of the United States in 1891, all United States courts have become pseudo-courts of fictions to settle contract disputes while perpetrating the fraud that they are still acting under the common law. These courts have no jurisdiction over a flesh and blood person. As a third example, Plaintiff alleges that the Sentencing Judge committed fraud by failing to reveal to Plaintiff that the yellow-fringed American Flag in his and all Admiralty Courtrooms are actually the flag of the Commander-In Chief of the corporate United States, a flag of war, which is forbidden to be flown in an American Common Law Court. As a final example, Plaintiff alleges that as an "Inhabitant" of the "California Republic," Plaintiff has made no oath supporting any constitution, and so is not subject to any constitutional jurisdictions.

In his second claim, Plaintiff alleges that he did not receive a fair trial because the Sentencing Judge may have been impaired during the trial. Plaintiff alleges that he repeatedly noticed that the judge would peruse wine websites during testimony. Both the judge and the prosecutor would speak openly of their shared desire to retire to a winery one day. Additionally, shortly after Plaintiff's trial, the Sentencing Judge was arrested and censured for driving under the influence and repeatedly attempting to avoid being arrested and incarcerated, and to otherwise receive preferential treatment, because of his status as a judge.

In his third claim, Plaintiff alleges that in 2006, one year prior to Plaintiff's

---

[2] "Courts across the country 'have uniformly rejected arguments' based on the sovereign citizen ideology as frivolous, irrational, or unintelligible. *United States v. Staten*, No. 1:10-cr-179, 2012 WL 2389871, at *3 (M.D. Pa. June 25, 2012) (collecting cases). The Ninth Circuit has rejected arguments premised on the ideology as 'utterly meritless.' *See United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986)." Mackey v. Bureau of Prisons, 2016 WL 3254037, at *1 (E.D. Cal. June 14, 2016).

incarceration, the entire California Penal System was declared in a "state of emergency" by then Governor Schwarzenegger due to overcrowding.  Mental health care and medical care were a victim of said overcrowding and came under federal receivership for five years.

Plaintiff was subjected to overcrowding and endured multiple attacks.  At Corcoran State Prison, Plaintiff was attacked by his cellmate with a cane in 2009.  In 2010 while out to court on a sentence reduction, Plaintiff was jumped, beat, and kicked in a holding cell designed to hold forty men, but filled with seventy-five plus inmates.  In 2012 at Corcoran, Plaintiff's cellmates attacked Plaintiff on two occasions, hitting and spitting on him because of his "paperwork."  Plaintiff alleges that he is currently at risk for future harm because he is a former special needs inmate and is forced to live with "mainliners."  He is regularly accosted both verbally and physically.

Plaintiff was exposed, and continues to be exposed, to an increased risk of harm due to overcrowding.  Plaintiff alleges that the California Supreme Court determined that adding an Eighth Amendment violation atop a sentence renders the sentence prejudicial *per se*.  It is a structural error, and therefore a Sixth Amendment violation as well.

Plaintiff lists the Warden as a defendant because he is the one involved in the causation at present by his participation in the affirmative actions of others in perpetuating Plaintiff's unauthorized incarceration.  He does so via his silent acquiescence to the ongoing constitutional violation.  He and all the previous wardens had the required *mens rea*, yet did nothing to correct the violation.

Plaintiff lists several other alleged overcrowding issues as well.  In 2007-2013, dorms designed to hold 200 inmates housed 500 inmates.  There were split dayrooms and yards. Gyms were filled with 300 bunk beds.  There was an asbestos exposure at the gym at Chino Institution for Men in 2010.  There was excessive ventilation and a resulting exposure to subfreezing air for twelve to fifteen hours, causing walls to drip and bedding to be covered with condensation from inmates' breath.  There were broken windows, rain flooding into cells and dayrooms, ants, rats, and cockroaches at Chino and Pleasant Valley.  There was arsenic and lead in the drinking water at Corcoran, Donovan, and Tehachapi.  There were three occasions at

Corcoran where Plaintiff and his cellmate were without a functioning toilet for sixteen hours. Cells reached highs of 108 degrees in the summer and forty-five degrees in the winter, with no electricity, water, or lights. Plaintiff had to remove his feces from the toilet by hand and place it in plastic lunch sacks to be put in waste cans that could burst and infect the population as a whole. Finally, at Tehachapi, Plaintiff and others who fell ill with COVID-19 found no medical resource other than Ibuprofen and being told by nurses to "gargle with salt water." In fact, there were no face masks for the first eight months of the pandemic.

The complaint also includes numerous legal citations and legal arguments.

For relief, Plaintiff asks for:
Immediate release. Expungement of record. No registration. No Parole. Pecuniary remuneration. (see: claims and 'Monetary Proof' page)[.]
Restoration of all rights.

(ECF No. 14, p. 6).

## IV. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.

2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Challenges to Sentence

In Plaintiff's First Amended Complaint, Plaintiff seeks release from prison due to his "unauthorized sentence." In his first claim, he alleges that "Fraud, Lack of Jurisdiction, [and] Lack of Judicial Immunity[] result[ed] in the issuance of an 'Unauthorized Sentence.'" (ECF No. 14, p. 3). In his second claim he alleges that the "6th amendment [was] violated by issuance of an 'unauthorized' sentence as well as by a judge who may have been impaired during adjudication." (Id. at 4). In his third claim, he alleges that the "5th, 14th, 11th and 13th Amendments to the U.S. Constitution [were] violated by implementation of an 8th Amendment violat[ion], 'unauthorized' sentence. (Violation of Separation of Powers Act by a state actor)." (Id. at 5). In his request for relief, Plaintiff asks for release, expungement of his record, no registration, no parole, and restoration of all his rights. (Id. at 6). Plaintiff also asks for money damages based on his wrongful imprisonment. (Id. at 6, 37, & 39).

Plaintiff's claims challenging his sentence are barred.

#### 1. *Habeas Proceedings and the Favorable Termination Rule*

Plaintiff's challenges to his sentence are barred by the favorable termination rule.

"[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citations and internal quotation marks omitted).

In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a

conviction or sentence invalid," a section 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. This "favorable termination rule" preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. Muhammad v. Close, 540 U.S. 749, 750-751 (2004). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82.

As Plaintiff is directly challenging his sentence in all three claims, Plaintiff's claims are barred by the favorable termination rule.[3]

### 2. *Judicial Immunity*

To the extent Plaintiff is bringing claim(s) against the judge who sentenced him, the claim(s) are barred by judicial immunity.

"It has long been established that judges are absolutely immune from liability for acts 'done by them in the exercise of their judicial functions.'" Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (quoting Bradley, 80 U.S. at 351).

There is a "distinction between lack of jurisdiction and excess of jurisdiction," Stump, 435 U.S. at 357 n.7, as illustrated by the following example:

> [I]f a probate judge, with jurisdiction over only wills and estates,

---

[3] Plaintiff alleges that he previously brought a habeas case, but he does not allege a favorable termination. (ECF No. 14, p. 35). The Court notes that it is taking no position on the merits of any previous or future habeas petitions.

> should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump, 435 U.S. at 357 n.7 (citing Bradley, 80 U.S. at 352).

Here, Plaintiff complains about, among other things, his trial and sentence. However, Plaintiff has not sufficiently alleged that the Sentencing Judge acted in the clear absence of all jurisdiction. Many of Plaintiff's arguments sound in sovereign citizen ideology, and "Courts across the country 'have uniformly rejected arguments' based on the sovereign citizen ideology as frivolous, irrational, or unintelligible. *United States v. Staten*, No. 1:10-cr-179, 2012 WL 2389871, at *3 (M.D. Pa. June 25, 2012) (collecting cases). The Ninth Circuit has rejected arguments premised on the ideology as 'utterly meritless.' *See United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986)." Mackey v. Bureau of Prisons, 2016 WL 3254037, at *1 (E.D. Cal. June 14, 2016) (finding Plaintiff's complaint, which was based on sovereign citizen ideology, to be frivolous). Thus, these arguments are meritless.

### 3. *Brown v. Plata*

Finally, to the extent Plaintiff is asking for immediate release based on the decision in Brown v. Plata, the Court notes that "a remedial court order, standing alone, cannot serve as the basis for liability under 42 U.S.C. § 1983 because such orders do not create rights, privileges or immunities secured by the Constitution and laws of the United States. Thus, *Plata* by itself does not provide any substantive right on which plaintiff can rely…." Thomas v. Alameda County, 2015 WL 1201290, at *3 (N.D. Cal. Mar. 16, 2015) (citation and internal quotation marks omitted). See also Peyton v. Brown, 584 F. App'x 603, 604 (9th Cir. 2014) ("[T]he decision in *Brown v. Plata*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 1910, 1946–47, 179 L.Ed.2d 969 (2011), requiring the State of California to reduce prison overcrowding to improve mental health and medical services to inmates, does not give [Plaintiff] cognizable claims for immediate or temporary supervised release merely because he also alleges deprivations arising from prison overcrowding.").

\\\

### C. Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." Id. (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff does not appear to be bringing any stand-alone Eighth Amendment conditions of confinement claims. Instead, he once again appears to be alleging that, because of

overcrowding, his sentence was unauthorized. And as discussed above, Plaintiff's claims challenging his sentence fail.

However, even if Plaintiff is attempting to bring Eighth Amendment conditions of confinement claims, Plaintiff's claims fail. As discussed below, many of Plaintiff's allegations involve incidents that occurred over four years ago, and claims based on these incidents are barred by the statute of limitations. Moreover, Plaintiff has not sufficiently linked the only named defendant, Warden Cates, to the overcrowding, or any of the incidents allegedly caused by the overcrowding. In fact, many of the incidents occurred years ago and at different institutions. There are no factual allegations suggesting that defendant Cates knew of and disregarded an excessive risk to Plaintiff's health or safety. There are also no factual allegations regarding anything that defendant Cates did or did not do that led to Plaintiff suffering a constitutional deprivation. Accordingly, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim.

The Court does not recommend granting further leave to amend. First, it does not appear that Plaintiff is attempting to bring separate conditions of confinement claims. Instead, as discussed above, he appears to be challenging his "unauthorized sentence." Second, to the extent that he is attempting to bring separate conditions of confinement claims, in the prior screening order the Court informed him that he failed to state any Eighth Amendment conditions of confinement claims and that "[i]f Plaintiff chooses to amend his complaint, he should include additional factual allegations regarding what already occurred and who was responsible." (ECF No. 5, p. 9). While Plaintiff includes additional allegations regarding what occurred, he does not sufficiently allege that defendant Cates was responsible. As the Court previously identified the deficiencies in Plaintiff's Eighth Amendment Conditions of Confinement Claims and provided Plaintiff with relevant legal standards, and as Plaintiff failed to cure the deficiencies, the Court finds that further leave to amend would be futile.

### D.  Statute of Limitations

California's two-year statute of limitations for personal injury actions applies to section 1983 claims. Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d 1191, 1198 (9th Cir.

2014); Cal. Civ. Proc. Code § 335.1.  Additionally, California Code of Civil Procedure § 352.1(a) provides: "If a person entitled to bring an action … is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."

Plaintiff's First Amended Complaint also facts that would be barred by the statute of limitations.  Based on Plaintiff's allegations, Plaintiff had up to four years from the date the causes of action accrued to bring his section 1983 claims.  However, according to Plaintiff, he has been incarcerated since 2007, and has been subjected to overcrowding since the beginning of his sentence.  Many of the other allegations in the complaint also involve incidents that occurred much longer than four years ago.  To the extent Plaintiff is bringing section 1983 claims based on incidents that occurred over four years ago, those claims are barred by the statute of limitations.[4]

### E. Prisoner Release Orders

Finally, it appears that Plaintiff is seeking a prisoner release order.

Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."  As to requests for a release order, the PLRA provides:

> **(3) Prisoner release order.--(A)** In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless--
>
> **(i)** a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and
>
> **(ii)** the defendant has had a reasonable amount of time to comply with the previous court orders.

---

[4] Plaintiff would likely be entitled to at least some tolling, such at tolling during the time he exhausted administrative remedies.  However, many of the incidents alleged in the complaint occurred much longer than four years ago, with the earliest occurring in 2006 or 2007, and there is no indication that this tolling would save those claims.

> **(B)** In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court in accordance with section 2284 of title 28, if the requirements of subparagraph (E) have been met.
>
> **(C)** A party seeking a prisoner release order in Federal court shall file with any request for such relief, a request for a three-judge court and materials sufficient to demonstrate that the requirements of subparagraph (A) have been met.
>
> **(D)** If the requirements under subparagraph (A) have been met, a Federal judge before whom a civil action with respect to prison conditions is pending who believes that a prison release order should be considered may sua sponte request the convening of a three-judge court to determine whether a prisoner release order should be entered.
>
> **(E)** The three-judge court shall enter a prisoner release order only if the court finds by clear and convincing evidence that--
>
>> **(i)** crowding is the primary cause of the violation of a Federal right; and
>>
>> **(ii)** no other relief will remedy the violation of the Federal right.
>
> **(F)** Any State or local official including a legislator or unit of government whose jurisdiction or function includes the appropriation of funds for the construction, operation, or maintenance of prison facilities, or the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order shall have standing to oppose the imposition or continuation in effect of such relief and to seek termination of such relief, and shall have the right to intervene in any proceeding relating to such relief.

18 U.S.C. § 3626(a)(3).

Here, Plaintiff has not submitted materials showing that a court previously entered an order for less intrusive relief that failed to remedy the deprivation of the federal right sought to be remedied through a release order.  Accordingly, Plaintiff is not entitled to a release order.

## V.  RECOMMENDATIONS

The Court recommends that this action be dismissed without granting Plaintiff further leave to amend.  In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified in the

screening order.  Thus, it appears that further leave to amend would be futile.

Accordingly, the Court HEREBY RECOMMENDS that:

1. This action be dismissed; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **September 15, 2021**          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE